New York State Department of Health
Division of Legal Affairs
2438 Corning Tower
Albany, NY 12237-0026

State of New York
Office of Mental Health Counsel
44 Holland Avenue
Albany, NY 12229

June 10, 2014

Judge Nicholas G. Garaufis
United States District Judge
United States District Court for the Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

Chief of the Disability Rights Section
U.S. Department of Justice
950 Pennsylvania Ave., NW-NYA
Washington, DC 20530

Andrew Gordon
PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019-6064

Cliff Zucker
Disability Rights New York
725 Broadway, Suite 450
Albany, NY 12207-2374

Clarence Sundram
Independent Reviewer
26 Abbey Road
Delmar, NY 12054

### Re: The State's Quarterly Report: January 23, 2014 – April 23, 2014

Dear Judge Garaufis, Mr. Sundram and Counsel

    Pursuant to the Settlement Agreement ("Agreement") filed with the United States District Court, Eastern District of New York on July 23, 2013, as subsequently amended, please accept this as

the State's Quarterly Report for the period January 23, 2014 to April 23, 2014 (the "Reporting Period").

During this Reporting Period, the State has made substantial progress in implementing the parties' Settlement Agreement. This Quarterly Report will provide an update of progress made in areas identified since the parties' last quarterly meeting, and then provide specific information relating to several new areas of implementation. Much of this information should be familiar to Plaintiffs and the Independent Reviewer as officials from New York State's Department of Health (DOH) and Office of Mental Health (OMH) engage in regular communication with the Plaintiffs and the Independent Reviewer regarding these activities, and will continue to do so. The parties recently spoke on June 4, 2014. A follow up meeting to discuss the Quarterly Report is scheduled for June 16, 2014. The State appreciates the input received from the Plaintiffs and the Independent Reviewer and looks forward to continuing our productive working relationship.

**Status of Supported Housing**

A Request for Proposals (RFP) for supported housing and in-reach was issued by the NYS Office of Mental Health on August 10, 2012. Six housing providers were awarded the opportunity to receive funding for the development and operation of up to 1,050 units of Supported Housing (SH) in Queens and Brooklyn, NY. Once a housing contractor receives a referral from the Health Home (HH) or Managed Long Term Care Plan (MLTCP) Care Manager, it will identify and rent apartments that match the resident's needs and preferences.

To date, each of those six housing providers received funding for approximately 50 to 63 supported housing units, for a combined total of 350 units. As soon as a housing contractor needs funding for additional units (based upon occupancy of their initial units), they will be given funding to develop another 50-63 units per their allocation in the RFP.

**Identification of NYC Adult Home Residents**

Each of the 23 NYC Impacted Adult Homes ("Impacted Adult Homes") is responsible for compiling a roster of its residents quarterly and submitting it to DOH (the "Resident Roster"). The Impacted Adult Homes are required to list the name of each Impacted Adult Home Resident residing in the home, the resident's basic demographic information, and to identify if a resident has a "Serious Mental Illness" as defined in Paragraph C(5) of the Settlement. All residents identified as having "Serious Mental Illness" on the second quarter 2013 Resident Rosters were added to the list of class members.

DOH cross-matched the Resident Rosters submitted for the second quarter of 2013 against its Medicaid data (using behavioral/mental health claims) to determine whether any Impacted Adult Home resident received treatment from a mental health services provider operated, licensed or funded by OMH during the period beginning 24 months before the Agreement was executed by the parties.[1]

---

[1] Section C (5) of the Stipulated Order of Settlement provides that all residents of NYC Impacted Adult Homes who received mental health services within 24 months of the date the Stipulation is "so-ordered" are class members.

All residents who fell into this category were added to the list of class members (even those not identified by the Impacted Adult Homes as residents with Serious Mental Illness).

This combination of names comprised the Certified Class Member List, which was submitted to the Parties in September 2013. The Certified Class Member List is comprised of 3,867 Adult Home Residents. DOH subsequently updated this list using information obtained from the Resident Rosters submitted for the third Quarter of 2013 (ending September 30, 2013) and Medicaid data regarding behavioral/mental health claims. This resulted in an additional seven Impacted Adult Home residents being added to the list of class members, for a total of 3,874 residents. The State provided the updated document, "Class Member List 2," (Attachment 1) to the Plaintiffs on November 8, 2013.

As expected, the number of residents added to the Certified Class Member List continues to increase slightly due to the submission of more current information obtained from the self-reported Resident Rosters and Medicaid claims information.

On March 14, 2014, DOH completed the U.S. Social Security Administration's Data Exchange Request Form (DXRF) requesting information regarding whether any remaining residents of the Impacted Adult Homes not already on the Certified Class Member List are receiving SSI or SSDI due to a mental illness. If the requested information exists and if DOH's data exchange request is approved, DOH will use the data obtained to identify additional class members. DOH's most recent correspondence from SSA was received on May 21, 2014 in which DOH was advised that a finalized response from SSA was still pending.

**Working Relationship with the Independent Reviewer**

The executed Agreement stipulates that Clarence Sundram (d.b.a. Quality Matters LLC) has been designated to serve as the Independent Reviewer responsible for monitoring the State's implementation of the Agreement. DOH entered into a sole source contract with Quality Matters, LLC on October 2, 2013. The contract will remain in place throughout the duration of the Agreement.

Since the execution of this contract, the Independent Reviewer, DOH and OMH have developed a productive working relationship. The Independent Reviewer and the State agencies communicate frequently regarding the progress of settlement implementation and the challenges associated with early implementation. In addition, the Independent Reviewer routinely participates in discussions and meetings with housing contractors, health homes and managed long term care plans responsible for implementing Settlement activities.

**Education and Training**

The State developed a comprehensive approach to education and training to guide its implementation of the Agreement. Training for Health Homes (HHs), Managed Long Term Care Plans (MLTCPs) and housing contractors continues through bi-weekly calls, ongoing FAQ documents, and one-on-one training and remediation activities as part of the Community Transitions Program's quality assurance process.

With regard to housing contractors, OMH continues to conduct in person group meetings on a regular basis, which have proven effective for information sharing and problem solving. OMH is also monitoring the housing contractors to ensure that all staff hired to help implement the Agreement have completed the required training in: motivational interviewing, settlement overview, and how to document in-reach contacts in the Child and Adolescent Reporting System (CAIRS). Based on the State's discussions and reviews of these contractors, the State will continue to offer education, training and close monitoring of the process to ensure compliance with the terms of the Agreement. The Independent Reviewer's staff participates in these educational sessions.

DOH has also continued its efforts to educate staff from HHs, MLTCPs and Housing Contractors responsible for Settlement implementation activities. Educational sessions have helped familiarize contractors with process and communication flow, assessor and care manager responsibilities, and community housing and support options that will provide the foundation for the person centered plan of care.

As discussed below, DOH's Quality Assurance process has revealed the need for further education, to be targeted in particular to the Registered Nurses who are performing the assessments. This includes, among other things, additional education on: housing (especially supported housing) and the range of community services; the documents that must be reviewed and taken into account before an assessment is complete; the proper workflow process; and challenges to the process that have been encountered by in-reach workers and assessors thus far.  Education will continue throughout implementation as needs are identified.

Copies of training material have been provided to the Plaintiffs and the Independent Reviewer, and will continue to be provided.

**Stage I Adult Homes**

The State identified three "pilot" Impacted Adult Homes in Kings County with a total population of 495 residents with serious mental illness (more than 12% of the Resident class), in which to begin implementation (Stage I Adult Homes). This approach allowed the State to focus its monitoring and quality control activities, identify problem areas, and make necessary revisions to the process at an early stage, thereby making any necessary corrections to the process before it is fully implemented.

This initial phase has lasted longer than anticipated, but has been extremely useful and informative in the early identification of technical obstacles, communication and workflow challenges. It has allowed the State Agencies to intervene and problem solve prior to expanding implementation to the remaining Kings and Queens County Impacted Adult Homes.

**In-reach**

In-reach activities began March 17, 2014 at the Stage 1 Adult Homes: Mermaid Manor Home for Adults, Oceanview Manor Home for Adults, and Surf Manor Home for Adults. As of April 23, 2014, 164 residents at the three facilities had been offered in-reach.

Initial in-reach efforts were targeted to the "fast-track" group of residents and then expanded to include residents who had not been identified as "fast track." Of the 164 residents that accepted and received in-reach during this reporting period, 67% (118 residents) expressed a desire to move into the community, 30% (48 residents) indicated that they were not interested in moving at this time, and 3% (5 residents) were undecided or indicated that they would take the possibility of moving to the community into consideration. Residents not interested in moving at the time of initial in-reach will be contacted at a minimum of once per year and offered in-reach again. Residents who were undecided about their option to move will be re-contacted and offered education and support to assist in the informed decision making process. The State anticipates that undecided residents will also be influenced by watching other residents transition out of the adult home and into the community. As of June 6, 2013, 329 residents (66% of the 495 total) have been offered in-reach.

Some challenges were experienced during the in-reach process. Initially adult home staff attempted to screen out some residents from being interviewed by the in-reach teams by telling them that certain residents were not interested in moving or were not class members. In-reach workers insisted on speaking to the residents personally. One adult home provided private space in which to conduct in-reach; at others, private space was said to be unavailable and in-reach was conducted in open areas that were noisy and offered little privacy. Despite these challenges, the statistics reflect that in-reach teams were largely successful in providing in-reach to residents.

**Assessment**

Impacted Adult Home Residents in the Stage I Adult Homes who expressed a desire to move into the community were referred for assessment. A total of 48 Uniform Assessment System for New York (UAS-NY) assessments were conducted by Health Homes or Managed Long Term Care Plans during the Reporting Period. (Attachment 2)

DOH reviewed 100% of the Adult Home Resident Assessment Report and recommendations (AHRARs) received from the assessors during this Reporting Period to determine whether HHs and MLTCPs are: (1) completing the report in its entirety; (2) properly following the assessment criteria; (3) following the communication and decision tree necessary for effective implementation. DOH's review revealed that the assessment packages were incomplete, either because the assessment package was missing information necessary for making recommendations for housing or services, or was incorrectly filled out. In addition, assessors have reported difficulties in obtaining certain documentation such as psychiatric and medical evaluations.

Based on this review, DOH recognized a need for additional education and training for HHs and MLTCPs on housing, community service determination and workflow process. DOH promptly convened a series of educational conference calls with each of the participating plans and programs.

5

During the calls, the entity responsible for assessment and care management was expected to participate with their assessment team including the assessors, care managers, and the key points of contact for this initiative within their organization. The Independent Reviewer has participated in several of the remedial calls. In addition, to these calls, DOH will require additional training and education for assessors and supervisors, and will be requiring proof that training has been completed. A Dear Administrator Letter (DAL) has been drafted and will be sent to the NYC Impacted Adult Homes, providing a list of documents they must have available for assessors and directing them to use their best efforts to provide a private space in which in-reach can be conducted. DOH has recently asked the Health Homes and Managed Long Term Care Plans to designate core teams dedicated to assessments and the care planning process. The State believes that this consistency will help to correct the process.

The Quality Assurance process has already resulted in the receipt of completed assessments from MLTCPs. Three completed assessment packages have been forwarded to the Housing Contractor who has reviewed and concurred with the assessment recommendations. The next steps are report distribution and the development of the person centered plan of care and the submission of the appropriate housing application. Quality Assurance is ongoing, and the State will provide additional information and analysis regarding the effects of the remedial steps it has taken in the next Quarterly Report.

**Transition**

Because no assessment packages were completed according to DOH's standards (and thus no housing or services recommendations could be made), the State has no aggregate data for this Reporting Period on the types of housing and services recommendations, HRA referrals, or transitions to the community. Once this aggregate data is available, the State will provide it to the parties.

As of April 23, 2014, no Impacted Adult Home Residents have been referred to housing or completed the process of transition to community housing, therefore there is no populated transition report at this time. The transition report developed in the OMH CAIRS system includes the name of the resident, the name of the adult home they are from, the name of the housing provider, the date of transition (moving), and the type of housing. OMH will be adding a field for the name of the housing staff assigned to each resident after transition. OMH does not maintain a database of the physical addresses of their clients, however will facilitate getting addresses from the housing contractors as needed.

**Discouragement/Interference**

As of April 23, 2014, Plaintiffs' counsel had referred to the State allegations of discouragement/interference at two of the Impacted Adult Homes. Both cases were promptly reviewed and investigated by DOH's Adult Care Facility Surveillance program and found to be unsubstantiated. The State Agencies will continue to investigate, monitor and respond to all allegations of discouragement/interference by the Impacted Adult Homes throughout the duration of the Agreement.

As a proactive measure, DOH's Community Transitions Program has maintained contact with the administrators of the three pilot homes to (1) enhance communication; (2) to understand and solve any challenges/concerns; and (3) to ensure that Class Members are afforded the opportunity to make an informed decision to receive in-reach and assessment for their potential transition to Supported Housing.

**Quality Assurance/Monitoring**

The State Agencies continue to conduct quality assurance activities intended to expeditiously identify and resolve implementation challenges. OMH has completed a 100% review of all in-reach forms submitted by the housing contractor during Stage I. In the early weeks, approximately 30% required minor corrections (missing information), but this has improved substantially and all forms were corrected prior to forwarding to the assessment entities. OMH maintains close dialogue with the housing contractors responsible for in-reach and Supported Housing development. OMH includes all housing contractors in meetings to allow their contractors to benefit from the experience gained from Stage I implementation. In addition, OMH will be providing a pamphlet to all in-reach workers containing background information on the settlement initiative to ensure that this information will be discussed with residents and left with them in written form. OMH will continue to conduct in person group meetings with all housing contractors, which has proved to be an effective tool for information sharing and problem solving. The agency is utilizing the CAIRS system to track progress. In addition, the housing contractors are successfully tracking those class members who indicate they do not wish to move to ensure that they receive follow up.

Likewise, DOH has engaged in extensive quality assurance efforts. As described in the Assessment section above, DOH is currently reviewing 100% of all completed AHRARs upon receipt to determine whether they are being properly completed. DOH has used and is using the results of this review to target needs for additional education and training and develop training materials, to be utilized during the training of the assessment entities. See Education, above. The State is utilizing information gathered by the Independent Reviewer and his staff and works cooperatively with the Independent Reviewer to carry out Quality Assurance and remedial efforts.

Lastly as noted above, based on discussion and feedback from the Independent Reviewer's team, DOH will be asking the HHs and MLTCPs to consider dedicating a group of assessors for this initiative to support the consistency and a heightened awareness of the complex needs of this vulnerable population. The State Agencies will continue to work alongside their partners to make any necessary adjustments for successful implementation.

**Fast Track**

Upon conclusion of Stage I implementation in the three designated Impacted Adult Homes, the State will utilize a listing of "fast track" class members who are those who have expressed an immediate desire to transition to Supported Housing, as the next group for focus on in-reach and assessment. The list will contain class members currently residing in the remaining Kings and Queens County Impacted Adult Homes and was generated from numerous sources including, but not limited

to, participants from the Fair Hearing, Adult Home Residents that have subsequently expressed their desire to the Parties to transition, and input from various advocacy organizations.

**Summary**

As all parties have acknowledged, this initiative is extremely complex. Multiple State agencies are responsible for coordinating activities with numerous intermediaries, with the goal of accomplishing a substantial transformation of a large human services program. Challenges to the implementation process are to be expected.

In this initial Reporting Period, the State has focused on developing the elements that are necessary for the successful implementation of the settlement agreement. Particular attention has been paid to what is helping or impeding this process, in order to refine implementation in preparation for its expansion to additional adult homes. With the help of Plaintiffs and the Independent Reviewer, the State has successfully identified individuals particularly interested in moving. Residents have been extremely responsive to in-reach and are very interested in moving to the community. The State anticipates that as residents move, those who are undecided or who have initially declined to move may change their minds. Although assessments have not been completed as quickly as anticipated, we are confident that the quality assurance processes being employed are successfully pinpointing problems, and that the remedial measures that we undertake will lead to successful outcomes.

The State appreciates the observations, participation and recommendations made by the Independent Reviewer and his team and has utilized many of these recommendations in refining the implementation process. We look forward to the discussion of this Quarterly Report at the June 16, 2014 meeting.

Respectfully Submitted,

Jennifer M. Moore
Associate Counsel
New York State Department of Health

Nancy Pepe
Assistant Counsel
New York State Office of Mental Health

cc: Julie E. Fink, Esq., Paul Weiss
    Amanda Maisels, Esq., Assistant United States Attorney
    Cliff Zucker, Esq., Disability Advocates, Inc.
    Sandi Toll, Esq., Assistant Counsel, NYS Executive Chamber
    Barbara Hathaway, Assistant Attorney General