UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| THE UNITED STATES OF AMERICA,<br><br>                        Plaintiff,<br><br>-against-<br><br>STATE OF NEW YORK,<br><br>                        Defendant. | 13-CV-4165 (NGG) (RML) |
| RAYMOND O'TOOLE, et al.,<br><br>                        Plaintiffs,<br><br>-against-<br><br>ANDREW M. CUOMO, et al.,<br><br>                        Defendants. | 13-CV-4166 (NGG) (RML) |
| RESIDENTS AND FAMILIES UNITED TO SAVE OUR ADULT HOMES, et al.,<br><br>                        Plaintiffs,<br><br>-against-<br><br>HOWARD ZUCKER, et al.,<br><br>                        Defendants. | 16-CV-1683 (NGG) (RER) |

**DECLARATION OF KENT T. STAUFFER IN
SUPPORT OF THE NEW YORK STATE OFFICE OF
<u>ATTORNEY GENERAL'S REQUEST TO WITHDRAW AS COUNSEL</u>**

KENT T. STAUFFER, pursuant to 28 U.S.C. § 1746, declares under penalty of perjury that the following is true and correct.

1.  I am Executive Deputy Attorney General for State Counsel with the New York State Office of the Attorney General ("OAG"). As part of my duties at the OAG, I supervise all attorneys who work for the OAG's Litigation Bureaus. Thus, my supervisory role includes oversight of the OAG attorneys in New York City who represent the defendants in the three above-captioned cases. I also supervise the OAG attorneys in Albany who are assigned to represent the respondents in certain related cases pending in New York state court, including *Doe v. Zucker*, Index No. 07079/2016, an Article 78 proceeding that is currently pending in Supreme Court, Albany County (the "*Doe* Case"). I submit this declaration in support of the OAG's request to withdraw as counsel for the defendants in the above-captioned cases pursuant to Local Civil Rule 1.4 of this Court. The OAG will also be moving to withdraw as counsel for the respondents in all related cases, including the *Doe* Case.

2.  I make this declaration based on personal knowledge and upon information and belief, the basis of which is my discussions and review of other communications with and among (i) Assistant Attorneys General located in Albany and New York City who report to me; (ii) client representatives for the defendants in the above-captioned cases; and (iii) the other parties.

### The TRO in the *Doe* Case

3.  In November 2016, the O'Connell & Aronowitz law firm filed the *Doe* Case, naming Howard A. Zucker, M.D., Commissioner of the New York State Department of Health ("DOH"), and Ann Marie T. Sullivan, M.D., Commissioner of the New York State Office of

Mental Health ("OMH"), as respondents. The O'Connell & Aronowitz firm also represents certain plaintiffs in the *Residents and Families* case pending before this Court.

4.     The petitioner in *Doe* alleges that certain adult home regulations promulgated by DOH and OMH have prevented him from returning to Oceanview Home for Adults, where he formerly resided until he moved out approximately two years earlier. Mr. Doe alleges that he cannot take care of himself in supported housing, which lacks some services which were available in the adult home. He requests, among other things, that the Court declare the challenged regulations to be arbitrary and capricious, discriminatory, and unenforceable. The adult home regulations challenged in *Doe* have also been challenged in the *Residents and Families* action, and those regulations are referenced in the Settlement Agreement in *United States v. New York* and *O'Toole v. Cuomo*. The respondents have not yet answered the Article 78 petition in *Doe*.

5.     On February 8, 2017, Assistant Attorney General Keith Starlin, counsel of record for the respondents in *Doe*, had a telephone conversation with the petitioner's counsel, Jeffrey J. Sherrin of O'Connell & Aronowitz. During this conversation, Mr. Sherrin informed Mr. Starlin for the first time that the petitioner might seek short-term injunctive relief, and in particular, a preliminary injunction to permit Mr. Doe to return to the Oceanview home. Mr. Sherrin did not suggest during this call that he would seek to enjoin the adult home regulations themselves in his motion. Moreover, while Mr. Starlin had further communications with Mr. Sherrin about the injunctive relief the petitioner planned to seek, Mr. Sherrin again did not state – or even imply – that he intended to seek an immediate suspension of the adult home regulations.

6.     The OAG was therefore surprised when, on February 15, 2017, it received a proposed order to show cause and temporary restraining order ("TRO"), along with supporting

3

papers, prepared by Mr. Sherrin in the *Doe* case. The proposed TRO broadly sought to restrain and enjoin DOH and OMH from enforcing or implementing the adult homes regulations. Moreover, the TRO application was set to be heard at 10:30 a.m. the following morning – less than 24 hours later.

7.     After reviewing the TRO papers, the OAG made plans to articulate its opposition to the TRO before the Honorable Denise Hartman at the hearing the next day.

8.     At approximately 9:03 a.m. on February 16 – less than an hour and a half before the TRO hearing – Michael G. Bass, an in-house attorney who is the Director of the Bureau of Litigation at DOH, sent an email directly to the petitioner's lawyer, Mr. Sherrin, stating that:

> DOH cannot consent to enjoin all of the regulations you list in your proposed TRO. We can consent to the following language for the contested regulations to be enjoined "The regulation of NYSDOH now codified at 18 NYCRR section 487.4(c) that reads "No operator of an adult home with a certified capacity of 80 or more and a mental health census, as defined in Section 487.13(b)(4) of this part, of 25 percent or more of the resident population shall admit any person whose admission will increase the mental health census of the facility.; 18 NYCRR sections 487.13(c), 487.13(d), 487.13(e), 487.13(f) and 487.13(g)"
>
> I'm fine with whatever grammatical edits you want to make, as long as the right regulations are listed.

9.     A few minutes later, at approximately 9:23 a.m., Mark Noordsy, Deputy Counsel for Litigation at OMH, replied on the same thread, stating, "Also, both OMH reg cites need (2) added at the end. Thanks."

10.    I learned of this email thread because Assistant Attorney General Starlin was copied on it and forwarded it to me for review. Mr. Starlin did not respond or otherwise participate in the email thread, in which the representatives of the agency clients directly

4

communicated their consent to an injunction against their own regulations. Neither Mr. Starlin nor anyone else in the OAG was aware of this development prior to receiving this email.

11. Immediately prior to the TRO hearing that same morning (February 16), I and several other OAG lawyers participated in various communications regarding these issues and the upcoming hearing with, among others, various attorney representatives of the client agencies.

12. The OAG concluded that it could not consent to the issuance of the TRO. However, because the TRO hearing was only minutes away, the OAG determined that, as counsel of record, it was obligated to appear, since withdrawing as counsel at that time – when there was no opportunity to arrange for substitute counsel – would not have been possible.

13. Assistant Attorney General Starlin attended the 10:30 a.m. hearing before Judge Hartman. Mr. Bass of DOH and Mr. Noordsy of OMH also attended the hearing. Mr. Sherrin appeared on behalf of the petitioner.

14. After Mr. Sherrin presented his arguments in favor of the TRO, Mr. Bass told Judge Hartman that DOH and OMH consented to the TRO.

15. Assistant Attorney General Starlin did not offer any argument in favor of or in opposition to the TRO request. Moreover, Mr. Starlin did not himself consent to the TRO, and when Judge Hartman asked for Mr. Starlin's opinion on the matter, he stated only that he deferred to his agency clients.

16. With the agreement of Mr. Bass and Mr. Noordsy, Mr. Sherrin thereafter handed Judge Hartman a revised copy of the TRO that had not previously been provided to the OAG – and that the OAG had not even seen.

17. Judge Hartman signed this revised version of the TRO. There was no transcript of the conference before Judge Hartman.

18. At approximately 3:22 p.m. that same day, Mr. Bass emailed a copy of the TRO to plaintiffs' counsel in the *United States v. New York* and *O'Toole v. Cuomo* cases. Mr. Bass did not copy anyone from the OAG on this email, and the OAG did not learn that the email had been sent until the following day.

19. The following week, on the afternoon of February 22, 2017, the OAG appeared before the Honorable Nicholas G. Garaufis for a status conference in *United States v. New York* and *O'Toole v. Cuomo*. I appeared at this conference, as did Assistant Attorney General Matthew Lawson, who is counsel of record in *United States v. New York* and *O'Toole v. Cuomo*. Also appearing for the defendants at this conference were Mr. Bass and Joshua Pepper, Deputy Commissioner and General Counsel at OMH.

20. At Judge Garaufis's request, Mr. Lawson explained his understanding of the TRO hearing in Albany to the Court. Mr. Bass, who had attended that hearing, provided additional details.

21. The Court was greatly troubled to learn about what had happened at the TRO hearing. The Court ordered, among other things, that Eric T. Schneiderman, the Attorney General of the State of New York, appear personally to explain why the OAG took a position in Albany that appeared to conflict with positions it took in the Eastern District of New York, where it is currently defending the regulations.

22. While the Attorney General is fully prepared to follow the directions of the Court, neither he nor anyone else at the OAG is in a position to explain a decision that it did not make, or in a position to explain its clients' actions at the Albany hearing. The Attorney General himself only learned of these events after the fact, when I communicated what had transpired at the conference before this Court.

### The Necessity of Withdrawal

23. The Office of Attorney General seeks to withdraw as counsel in the above-captioned cases because the OAG and defendants have a fundamental disagreement about how this matter should be handled. *See* N. Y. Rules of Professional Conduct 1.16(c)(4).

24. The OAG successfully accomplished (and defended) the removal of the *Residents and Families* case to this Court, and it recently filed a pre-motion letter in support of its planned motion to dismiss in that case.

25. Additionally, the OAG recently prepared and filed lengthy motions to dismiss in two related lawsuits in New York state court that also challenge the adult home regulations. *See Oceanview Home for Adults, Inc. v. Zucker*, Index No. 6012/2016 (Sup. Ct. Albany Co.); *Hedgewood Home for Adults, LLC v. Zucker,* Index No. 2016-52782 (Sup. Ct. Dutchess Co.). These motions remain pending in state court.

26. The OAG also seeks to withdraw because its clients have failed to cooperate in the representation and have made the representation unreasonably difficult, if not impossible, for the OAG to carry out effectively. *See* N. Y. Rules of Professional Conduct 1.16(c)(7). The OAG has been excluded from important communications with opposing counsel that were conducted directly by its clients.

27. On behalf of the OAG, I submit that permitting withdrawal of the OAG and the substitution of counsel in *United States v. New York* and *O'Toole v. Cuomo* will not delay the trial scheduled for July 10, 2017, or otherwise prejudice the defendants. First, as is apparent from the events I have recited, agency counsel for the defendants have been actively involved in the defense of these cases and, in addition, have borne the primary responsibility for conducting the implementation of the Consent Decree in these cases. Second, as the Court noted during the conference before it on February 22, the parties would have available the

record, or at least portions of it, from the last trial for use as appropriate. Finally, the OAG would of course comply with its obligation under N.Y. Rules of Professional Conduct 1.16(e) to assist in the transition to substitute counsel.

28. The OAG has contacted the defendants, our clients, to seek their permission to withdraw; no clients have as yet consented to withdrawal.

Dated: New York, New York
February 28, 2017

_____
KENT T. STAUFFER