UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| THE UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>         v.<br><br>STATE OF NEW YORK,<br><br>                    Defendant. | Civil Action No. 13-CV-4165 (NGG) |
| RAYMOND O'TOOLE, ILONA SPIEGEL, and STEVEN FARRELL, individually and on behalf of all others similarly situated,<br><br>                    Plaintiffs,<br><br>         v.<br><br>KATHLEEN C. HOCHUL, in her official capacity as Governor of the State of New York, NIRAV R. SHAH, in his official capacity as Commissioner of the New York State Department of Health, ANN MARIE T. SULLIVAN, in her official capacity as Acting Commissioner of the New York State Office of Mental Health, THE NEW YORK STATE DEPARTMENT OF HEALTH, and THE NEW YORK STATE OFFICE OF MENTAL HEALTH<br><br>                    Defendants. | Civil Action No. 13-CV-4166 (NGG) |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFFS'
MOTION TO ENFORCE THE SECOND AMENDED STIPULATION OF
SETTLEMENT**

**OCTOBER 18, 2022**

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................... 1
ARGUMENT .................................................................................................................................. 3
    I.    The State's Non-Compliance Is Widespread and Systemic ............................................... 3
    II.   Plaintiffs Satisfied the Meet-and-Confer Requirements of Section M.3 of the Settlement Agreement .......................................................................................................... 4
    III.  The State's Latest Proposals Do Not Moot Plaintiffs' Motion to Enforce ......................... 6
CONCLUSION ............................................................................................................................... 7

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Barcia v. Sitkin*,
    367 F.3d 87 (2d Cir. 2004)......................................................................................................3

*Fortin* v. *Commissioner of the Dep't of Mass. Pub. Welfare*,
    692 F.2d 790 (1st Cir.1982)..............................................................................................3, 4

**Other Authorities**

18 NYCRR § 487.11(l)(12) ...........................................................................................................1

New York State Dep't. of Health, Dear Administrator Letter #20-31, Jan. 21,
    2021..........................................................................................................................................6

## PRELIMINARY STATEMENT

For over four years now, the State has failed to implement Space Plans in Adult Homes. These Space Plans are critical to ensuring that class members and settlement implementation providers can do the work contemplated by the Settlement and Supplement unimpeded, as required by Section E.1 of the Supplement. *See, e.g.*, Supplement § E.1 (ECF No. 196 at 11); 18 NYCRR § 487.11(l)(12). Plaintiffs appreciate that the State has made recent efforts to implement Space Plans in some homes, especially since Plaintiffs filed this motion, but the State's results have been systemically lacking and the additional steps that the State has now proposed will take too long and have no certain results. Judicial intervention is needed.

As early as 2017, the Independent Reviewer noted that Adult Homes were not providing space for class members and Providers to meet. *See* Pl. Memo of Law, ECF No. 352 at 7-8. Plaintiffs and the Independent Reviewer raised this issue again in 2018 and 2019, and since then have repeatedly urged and attempted to work with the State to ensure that all Adult Homes implement Space Plans. Still, in 2022, just fifteen months before the State is required to come into substantial compliance with the requirements of the settlement, at least three Adult Homes that cumulatively house over 250 class members have no plan to ensure that providers have space to meet with class members.

The State's arguments to try to forestall Court intervention at this point are unavailing.

*First,* the State's failures are unequivocally "substantial and sufficiently frequent or widespread to be systemic." The record is overwhelming that the State has failed to enforce the Space Plan requirements on Adult Homes for years, and thereby deprived hundreds of class members adequate space to meet with providers and carry out the mandate of the Settlement and

Supplement, and continues to do so. While the State seeks to minimize the number of Adult Homes that currently do not have Space Plans, the three Adult Homes still lacking a Space Plan account for over 250 class members, a very substantial number.

*Second*, Plaintiffs have more than adequately satisfied the meet-and-confer requirements of Section M.3 of the Agreement. The purpose of the meet-and-confer requirements was to put the State on notice of alleged deficiencies. Plaintiffs have sent meet-and-confer letters to the State raising the issue of inadequate Space Plans since September 25, 2019, with a further meet-and-confer letter invoking Sections E.1 of the Supplement and M.3 of the Agreement on February 26, 2021, and another letter identifying the State's breach of Section E.1 of the Supplement on September 8, 2021. Plaintiffs and this Court itself also raised the State's failure to implement Space Plans in three court conferences within the past year: November 3, January 21, and June 9. How much more notice could be provided? Plaintiffs only filed a motion to enforce Section E.1 of the Supplement as a last resort on September 23, 2022, with this Court's encouragement.

Finally, although positive, the State's promises of remediation at this late date do not moot the relief requested. Plaintiffs and the Court have heard these promises for too long. And the steps that the State proposes to take are contingent and will at best take months, or even years, to work. Class members need more immediate relief.

Accordingly, Plaintiffs ask the Court to enter an order requiring the State to finalize and ensure implementation of Space Plans, including whether through room rental or other arrangements, at Oceanview Manor Home for Adults, Central Assisted Living, and Garden of Eden Home.

**ARGUMENT**

I.   **The State's Non-Compliance Is Widespread and Systemic**

The State's failure to implement Space Plans for many years, and currently in at least three Adult Homes, constitutes non-compliance that is "substantial and sufficiently frequent or widespread to be systemic." Agreement § M.3 (ECF No. 160 at 18).

Given the well-documented history of Adult Home staff and administrators discouraging and interfering with class members who consider moving elsewhere in the community, class members in every Adult Home need private space in which they can meet with Providers to discuss where they would like to live – whether that be an Adult Home or not. *See* Pl. Memo. of Law, ECF. No. 352 at 3. For years, Providers have not been able to do their work unimpeded in these Adult Homes because the State has failed to ensure that adequate space is provided. *Id*. at 7. Class members, in turn, have been robbed of their right to a meaningful opportunity to transition out of the Adult Home without the specter of outside pressure. The result—that hundreds of class members remain unable to make an independent, informed choice on where to call home—undermines the core of the Settlement and Supplement.

The State's non-compliance *is* substantial and widespread so as to be systemic. Here, the test is whether there is "substantial compliance." *See Barcia v. Sitkin*, 367 F.3d 87, 103 (2d Cir. 2004) (affirming that district court did not abuse its discretion in finding state agency out of compliance with a consent judgment under a substantial compliance framework).[1] *Id.* "[N]o particular percentage of compliance can be a safe-harbor figure, transferable from one context to

---

[1] "Like 'reasonableness,' [] 'substantiality' must depend on the circumstances of each case, including the nature of the interest at stake and the degree to which noncompliance affects that interest." *Fortin* v. *Commissioner of the Dep't of Mass. Pub. Welfare,* 692 F.2d 790, 795 (1st Cir.1982).

3

another." *Fortin* v. *Commissioner of the Dep't of Mass. Pub. Welfare*, 692 F.2d 790, 795 (1st Cir.1982).

Here, the State is obligated to ensure adequate space in each Adult Home and has many tools at its disposal to ensure that space is provided – including enforcement actions against the Adult Homes but also including the ability to rent space from these Homes or in the alternative spaces nearby, as Plaintiffs have proposed. Humerick Reply Decl. Ex. 1, Jan. 21, 2022 Tr. at 55:1-3. Class members possess an unequivocal right to meet with Providers absent interference, and the harm wrought by depriving over 250 (or more, if New Gloria's is also included) class members of independent living choices is potentially enormous. To put the 250 figure in perspective, only 517 class members have transitioned since the Supplement was signed in March 2018. *See* Humerick Reply Decl. ¶ 4. The State's failure to ensure Space Plans is longstanding and impacts an enormous number of class members. It is systemic and widespread.

**II.     Plaintiffs Satisfied the Meet-and-Confer Requirements of Section M.3 of the Settlement Agreement**

Plaintiffs have more than satisfied their meet-and-confer obligations under Section M.3 of the Settlement Agreement. There is no doubt the State has been on notice of the issue for years and has failed to ensure that all homes have Space Plans.

The State's failure to ensure adequate space for class members and Providers has been a persistent problem since at least 2017. Plaintiffs sent meet-and-confer letters as required by Section M.3 of the Settlement and Section H.1 of the Supplement to the State on September 25, 2019 as well as on February 26, 2021 and September 8, 2021 that identified the State's violations of Sections E and F and specifically referenced non-compliance with Space Plans. *See* Humerick Reply Decl. Ex. 2 at 8-9; Humerick Reply Decl. Ex. 3 at 1-2; Begleiter Decl. Ex. 1 at 5.

Plaintiffs' September 25, 2019 letter notified the State both that the letter was part of the "meet-and-confer process pursuant to Section M.3 of the Agreement and Section H.l of the Supplemental Agreement" and that "as the parties have discussed numerous times, the State has failed to ensure that the Adult Homes provide private space for Peer Bridgers to meet with residents." Humerick Reply Decl. Ex. 2 at 1, 9. The letters dated February 6, 2021 and September 8, 2021 identified these same provisions of the Agreement along with the State's violations of Section E.1 of the Supplement; the February 26, 2021 letter explicitly stated that the Parties had been continuously meeting and conferring since 2019 on the State's non-compliance with, among other things, Section E.1 of the Supplement. Humerick Reply Decl. Ex. 3 at 1-2. Plaintiffs' September 8, 2021 letter also stated that "not all of the Adult Homes currently have an approved space plan… and some of them are Adult Homes with longstanding patterns and practices of discouragement." Begleiter Decl. Ex. 1 at 5. Contrary to the State's arguments, these letters are not outdated. Opp. at 4. Neither the Settlement nor the Supplement provides a set period of time within which the Parties' meet and confer process must resolve and be closed. Agreement § M.3. Moreover, neither the Settlement nor the Supplement requires Plaintiffs to somehow renew the meet-and-confer process simply because the State has failed to resolve an outstanding issue for a long period of time.

The Parties have met numerous times within and after 30 days of sending each meet-and-confer letter in efforts to resolve the State's failure to ensure Space Plans in all the adult homes. The 60 day-period following any such meeting (providing the State with time to resolve its non-compliance) has also come and gone with respect to each meet-and-confer letter. Transcripts from the Parties' court conferences themselves reflect this. The Parties and this Court have discussed the State's failure to implement Space Plans at all three court conferences in the

past year. Humerick Reply Decl. Ex. 4, Jun. 9, 2022 Tr. at 7:7-15, 39:2-41:4; Ex. 5, Jan. 21, 2022 Tr. at 15:1-3, 54:21-55:3; Ex. 6, Nov. 3, 2021 Tr. at 26:6-7 ("MR. FRANCIS: Yeah, right. So the space plans have been challenging and frustrating."). In light of this record of written and oral correspondence, for the State to say that the Parties have not been meeting and conferring on Space Plan issues for more than a year is inaccurate, at best.

### III. The State's Latest Proposals Do Not Moot Plaintiffs' Motion to Enforce

Now that Plaintiffs have filed the instant motion, and after years of insufficient action to implement Space Plans as required under the Supplement, the State says it has initiated enforcement actions to resolve the Space Plans issue at the three remaining Homes. Opp. at 3. However, the actions the State is taking do not offer any short-term prospect of fulfilling the State's obligations to require Space Plans and do not moot the relief requested by Plaintiffs' motion.

Plaintiffs welcome these enforcement actions and hope that they will eventually lead to resolution of Space Plans issues. However, by the State's own estimation, the start of enforcement proceedings is at least six weeks away. *See id.* Once the State issues a citation to an Adult Home for violating state regulations, the home has at least thirty days to correct the cited violation. SSL 460-d(7)(b)(1). In its plan of correction, a home could request additional time to comply. *Id*. The cited home could also request an informal opportunity to contest the citation, known as an Inspection Review Process. Humerick Reply Decl. Ex. 7, New York State Dep't. of Health, Dear Administrator Letter #20-31, Jan. 21, 2021, at 1. The adult home has ten business days to simply request the IRP. *Id*. The meeting between Defendants and the home will then be scheduled within 30 days of the request. *Id*.

The State should have years ago done what it proposes to do a few months from now. Had the State acted earlier, it could have repeatedly cited Adult Homes for violations of residents' rights and positioned itself to escalate enforcement now. *See* SSL 460-d(7)(b)(2)(iii).

Moreover, the State's enforcement-only approach implies that the State's sole recourse in the face of these three Adult Homes' unwillingness to provide adequate space is to start the process of bringing enforcement actions against each Home. That is not so.

The State can and should take other immediate action to resolve this issue for class members and Providers as expeditiously as possible. While the burden remains on the State to come into compliance with the Supplement, Plaintiffs are more than willing to work with the State to find the best path forward. As Plaintiffs have previously suggested, the State has the capability to rent rooms from the Adult Homes or to rent and park a trailer outside the Adult Homes to temporarily provide space for Providers and class members to meet until more permanent space can be made available or take other potential actions. Humerick Reply Decl., Ex. 1 at 55:1-3. With such readily available solutions, there is no excuse for the State to continue to fail to provide adequate space for Providers and class members at any Adult Home in the short term.

## CONCLUSION

For the aforementioned reasons, Plaintiffs respectfully request that the Court enforce the Settlement Agreement through the proposed order submitted on September 23, 2022. Plaintiffs further respectfully request that the Court impose any additional relief that the Court deems just and proper.

Dated: October 18, 2022

Respectfully submitted,

For the Plaintiff Class:

_/s/ Jacob Humerick_
Jacob Humerick
PAUL, WEISS, RIFKIND, WHARTON
& GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019-6064
(212) 373-3593
jhumerick@paulweiss.com


_/s/Roberta Mueller_
Roberta Mueller
NEW YORK LAWYERS FOR
THE PUBLIC INTEREST, INC.
151 West 30th Street, 11th floor
New York, NY 10001-4007
(212) 336-9304
rmueller@nylpi.org


_/s/Marc Fliedner_
Marc Fliedner
DISABILITY RIGHTS NEW YORK
25 Chapel Street, Suite 1005
Brooklyn, NY 11201
(518) 432-7861
Marc.Fliedner@drny.org


_/s/Ira Burnim_
Ira A. Burnim
BAZELON CENTER FOR MENTAL
HEALTH LAW
1105 15th Street, N.W., Suite 1212
Washington, D.C. 20005
(202) 467-5730
irab@bazelon.org

8

*/s/ Tiffany Liston*

Tiffany Liston
Kevin Cremin
Jota Borgmann
Tanya Kessler
MOBILIZATION FOR JUSTICE
100 William Street, 6th Floor
New York, NY 10038
(212) 417-3811
tkessler@mfjlegal.org
jborgmann@mfjlegal.org

For Plaintiff UNITED STATES OF AMERICA:

BREON PEACE
United States Attorney
Eastern District of New York

By: _____

Michael J. Goldberger
Assistant United States Attorney
271-A Cadman Plaza East
Brooklyn, NY 11215
(718) 254-6052
Michael.Goldberger@usdoj.gov


REBECCA B. BOND
Chief

AMANDA MAISELS
Deputy Chief

By: _____

Jillian Lenson
Jennifer Robins
Trial Attorneys
Disability Rights Section
Civil Rights Division
150 M Street, N.E.
Washington, D.C. 20002
Jillian.Lenson2@usdoj.gov
(202) 305-5238

9

                                        Tiffany Liston
                                        Kevin Cremin
                                        Jota Borgmann
                                        Tanya Kessler
                                        MOBILIZATION FOR JUSTICE
                                        100 William Street, 6th Floor
                                        New York, NY 10038
                                        (212) 417-3811
                                        tkessler@mfjlegal.org

For Plaintiff UNITED STATES OF AMERICA:

                                        BREON PEACE
                                        United States Attorney
                                        Eastern District of New York

By:       */s/ Michael Goldberger*
                                        Michael J. Goldberger
                                        Assistant United States Attorney
                                        271-A Cadman Plaza East
                                        Brooklyn, NY 11215
                                        (718) 254-6052
                                        Michael.Goldberger@usdoj.gov

                                        REBECCA B. BOND
                                        Chief

                                        AMANDA MAISELS
                                        Deputy Chief

By:       */s/ Jillian Lenson*
                                        Jillian Lenson
                                        Jennifer Robins
                                        Trial Attorneys
                                        Disability Rights Section
                                        Civil Rights Division
                                        150 M Street, N.E.
                                        Washington, D.C. 20002
                                        Jillian.Lenson2@usdoj.gov
                                        (202) 305-5238