UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

THE UNITED STATES OF AMERICA,

                              Plaintiff,

        -against-

STATE OF NEW YORK,

                              Defendant.

RAMOND O'TOOLE, ILONA SPIEGEL, and
STEVEN FARRELL, individually and on behalf
of all others similarly situated,

                              Plaintiffs,

        -against-

KATHLEEN C. HOCHUL, in her official capacity
as Governor of the State of New York, NIRAV
R. SHAH, in his official capacity as
Commissioner of the New York State
Department of Health, ANN MARIE T.
SULLIVAN, in her official capacity as Acting
Commissioner of the New York State Office of
Mental Health, THE NEW YORK STATE
DEPARTMENT OF HEALTH, and THE NEW
YORK STATE OFFICE OF MENTAL HEALTH,

                              Defendants.

**MEMORANDUM & ORDER**
**13-CV-4165 (NGG) (ST)**

**13-CV-4166 (NGG) (ST)**

NICHOLAS G. GARAUFIS, United States District Judge.

Before the court is the parties' joint motion for final approval of the Proposed Third Amended Stipulation and Order of Settlement (the "Third Amended Agreement" or "Agreement") (Dkt.

1

304-1.)[1] In December 2023, the court preliminarily approved this Agreement, approved the notice of the Agreement to be sent to class members, and scheduled a fairness hearing which was held on February 22, 2024. (Min. Entry dated Dec. 20, 2023; Order dated Dec. 20, 2023; Min. Entry dated Feb. 22, 2024.)

After reviewing the proposed Third Amended Agreement as well as statements from class members at the fairness hearing and in written submissions, the court finds that the Class was afforded adequate notice, and that the terms of the Agreement are fair, reasonable, and adequate. The court therefore GRANTS the parties' joint motion for final approval of the Third Amended Agreement.

## I. BACKGROUND

The court assumes familiarity with the lengthy history of the present cases. (*See* Mem. and Order dated Sept. 6, 2018 ("Sept. 2018 M&O") (Dkt. 152) at 2-8 (reviewing the background through the court's approval of the Supplement to the Second Amended Stipulation and Order of Settlement ("Supplement") in September 2018.)

The original settlement included a class of approximately 4,000 persons with Serious Mental Illness ("SMI") residing in 22 specified adult homes in New York City. (Ninth Annual Report Submitted by Clarence J. Sundram, Independent Reviewer ("2023 Annual Report") (Dkt. 285) at 3-4.)[2] The settlement,

---

[1] For ease of reference, the court cites the docket corresponding to *United States v. New York,* No. 13-CV-4165 (NGG) as "Dkt." and generally cites to filings in this docket. The court cites the docket corresponding to *O'Toole. et al. v. Cuomo, et al.* No. 13-CV-4166 (NGG) as "Class Dkt."

[2] The number of "active" class members has fluctuated over time. The number increased for the first four years of the settlement while individuals with SMI continued to be admitted to the specified adult homes. (*Id.*) The class was capped in September 2018 under the Supplement to the Second

among other things, required the State to provide supported housing units for members of the class and provide appropriate services to aid individuals to move and transition into the community. (Sept. 2018 M&O at 5-6.) Since July 2013, the settlement has been amended multiple times. The parties entered into an Amended Stipulation and Order of Settlement on January 30, 2014 (Dkt. 23), a Second Amended Stipulation and Order of Settlement on May 4, 2017 (Dkt. 105), and a Supplement to the Second Amended Stipulation and Order of Settlement on March 12, 2018 (Dkt. 141-1). The 2018 Supplement included a termination date of December 31, 2020 "if, as of that date, the State has transitioned substantially all eligible NYC Adult Home Residents who are appropriate to be transitioned and has substantially complied with its other obligations as set forth in the Agreement and this Supplement." (Supp. to Second Am. Stip. and Order of Settlement § H.2.) On May 10, 2021, the termination date was extended to December 31, 2023. (Dkt. 213.)

To date, the State has transitioned more than 1,200 class members to supported housing and other community housing. (Third Amended Agreement at 2.) However, there are still class members who wish to transition to community housing but have not yet done so. (*See* Third Amended Agreement at 3; Fairness Hr'g Tr. at 11:20-12:2.)

---

Amended Stipulation and Order of Settlement (Supp. to Second Am. Stip. and Order of Settlement (Dkt. 141-1) § G.) And the number has declined since as class members have been transitioned to the community, have died, or have been discharged outside the Settlement Agreement process (also referred to as "non-transitionally discharged"). (2023 Annual Report at 3-4.)

## II. THIRD AMENDED AGREEMENT AND FAIRNESS HEARING

To extend the time for class members to transition and update the procedures attendant to transitioning class members to community housing, the parties jointly submitted the Third Amended Agreement and moved for the court to approve this Agreement.

The Agreement extends the settlement agreement from the prior termination of December 31, 2015, to June 30, 2025, "if, as of that date, the State has transitioned substantially all eligible Class Members who are appropriate to be transitioned and has substantially complied with its other obligations as set forth in this Agreement." (Third Amended Agreement § J.1.)

The Agreement also makes several changes that the parties anticipate will allow the State to more efficiently transition class members who desire to move into community housing. These changes affect three groups of class members in the following ways. First, for class members in the process of moving to community housing, the State will remain responsible for making sure services to help these class members move are available until June 30, 2025. (*See id.* § E.) Settlement providers, Peer Bridgers, and other forms of transition services will continue to be available to these class members. (*See id.* §§ E.2, E.3.) Second, for class members who choose not to move, the Third Amended Agreement includes provisions requiring the State to determine that these class members made an informed choice after receiving all necessary information and before the State's obligations to that class member come to an end. (*See id.* § C.) And third, for class members who have already moved to community housing, the State will maintain its ongoing obligations to these class members. (*Id.* § D.1.)

In addition, the Third Amended Agreement includes provisions that: restrict new admissions to "Transitional Adult Homes," as defined by 18 NYCRR § 487.13 (*id.* § F); discourage interference

with the implementation of the settlement (*id.* § G); update how the State reports its progress under the Agreement (*id.* § H.1-5); extend the court's jurisdiction to ensure compliance with the agreement until June 30, 2025 (*id.* § J); and ensure a strong role for the Independent Reviewer in the Agreement's implementation. (*Id.* § H.7-9.).

The court preliminarily approved the Third Amended Agreement in December 2023, pending a fairness hearing. (Min. Entry dated Dec. 20, 2023; *see also* Third Amended Agreement.) At that time, the court also approved the "Notice of Proposed Third Amended Agreement to the Settlement Agreement and Fairness Hearing." (Min. Entry dated Dec. 20, 2023; *see also* Notice (Dkt. 304-2).) The fairness hearing was held on February 22, 2024, and the deadline to submit letters to the court has passed. (Min. Entry dated Feb. 22, 2024.)

The court now turns to the motion for final approval of the Third Amended Agreement.

## III.  DISCUSSION

Class claims may be settled only with court approval after following the proposed procedures outlined in Fed. R. Civ. P. 23(e). Final approval of a proposed settlement requires a determination that class members were reasonably notified of the settlement and that the proposed settlement is "fair, reasonable, and adequate." *Id.*

### A.  Adequacy of Notice

"The standard for the adequacy of a settlement notice in a class action under either the Due Process Clause or the Federal Rules is measured by reasonableness." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,* 396 F.3d 96, 113-14 (2d Cir. 2005). Notice is reasonable if it "fairly apprise[s] the prospective members of the class of the terms of the proposed settlement and of the options

that are open to them in connection with the proceedings." *Id.* at 114. "Notice need not be perfect, but need be only the best notice practicable under the circumstances, and each and every class member need not receive actual notice [if] class counsel acted reasonably in choosing the means likely to inform potential class members." *Doe #1 by Parent #1 v. New York City Dep't of Educ.*, No. 16-CV-1684 (NGG) (RLM), 2018 WL 3637962, at *9 (E.D.N.Y. July 31, 2018).

The Notice to the class was reasonable in both the notice's content and in its distribution to class members. The Notice clearly summarized the Third Amended Agreement, provided information on how to obtain a full copy of the Agreement, and provided instructions on how class members can inform the court of their approval or objections to the Agreement. (*See generally* Notice at 1-15.) The parties coordinated on how best to distribute the Notice and shared it by posting it in 21 adult homes, hand delivering the Notice through Peer Bridgers, and mailing the Notice to class members who moved out of the adult homes. (Fairness Hr'g Tr. at 17:8-19:10.) Taken together, the Notice to class members of the proposed Third Amended Agreement was adequate.

### B.   Approval of the Third Amended Agreement

Rule 23(e) provides that "the court may approve [a proposed settlement] only after a hearing and on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). A court must examine both the negotiation process and the settlement's substantive terms. *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001).

The negotiation process here was serious, deliberate, and was handled by expert counsel representing all parties, including absent class members. The discussions leading to the proposed Third Amended Agreement began over seven months prior to its

6

filing. (Min. Entry dated May 8, 2023.) During this time, the parties worked diligently and informed the court of their progress in status conferences and through the Independent Reviewer. (*See* Letter Regarding Framework of Parties' Discussions (Dkt. 294); Min. Entry dated Sept. 25, 2023; Min. Entry dated Oct. 27, 2023.) The negotiations benefitted immensely from the parties' prior experience in implementing past version of the settlement as well as the invaluable input from the Independent Reviewer. Based on the foregoing, the court finds that the negotiation process effectively represented the interest of the class. *D'Amato*, 236 F.3d at 85.

The court also finds that substance of the Third Amended Agreement is fair, reasonable, and adequate when reviewing the Agreement under the nine *Grinell* factors. (*See* Sept. 2018 M&O at 12-13 (citing *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res. Inc.*, 209 F.3d 43 (2d Cir. 2000)).)[3]

The Third Amended Agreement protects class members' interests. It allows for additional time to ensure that interested class members transition to community housing. It streamlines the reporting requirements to reflect the present needs of the significantly smaller class of individuals who still desire to transition. And it does so while continuing to ensure that individuals

---

[3] The nine *Grinell* factors include: "1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation." *Id.* "A court need not find that every factor militates in favor of a finding of fairness; rather, a court considers the totality of these factors in light of the particular circumstances." *Id.*

who opt out of transitioning do so only after receiving the information necessary to make an informed choice. The Agreement continues to provide resources to class members after their transition to community housing and carries over provisions developed in the last ten years that have been found to be particularly effective, including the use of Peer Bridgers to assist class members in the transition process. The Agreement also includes provisions to prevent interference and ensure ongoing oversight by the Independent Reviewer. Taken together, the Agreement provides robust relief to the class members.

In addition, at the fairness hearing and in letters addressed to the court, no class members have objected to final approval of the Agreement after having received adequate notice and an opportunity to do so. (*See generally* Fairness Hr'g Tr.; Class Members' Written Submissions (Class Dkt. 415-1).) This is in contrast to several class members who expressed support for the Agreement (*see, e.g.,* Class Members' Written Submissions at ECF 13) or expressed a continued interest in moving to community housing which the extension of the deadline to June 30, 2025, would allow. (*See id.* at ECF 19-21.)

The court does note that at the fairness hearing and in letters, multiple class members expressed frustration with the delay in implementing the original settlement.[4] The court is aware of the many obstacles that have prevented the transition of class members into the community. The Agreement's extension and updated reporting and transition provisions may help class members who expressed concern with these delays. However, given

---

[4] The court also notes that, at the fairness hearing, the court directed the Independent Reviewer and counsel for the plaintiffs to follow up with appropriate individuals to help class members raising individualized concerns. (*See, e.g.,* Fairness Hr'g Tr. at 23:6-9; *id.* at 38:7-13.) The court further directs the Independent Reviewer and counsel for the class to follow up on concerns raised in these letters.

the complexity of this issue, obstacles are likely to continue to arise even under the new Agreement which requires the State to identify individuals interested in transitioning and give them the resources to do so. But even if not perfect, the court finds that the Agreement meets and goes beyond the requirements to be "fair, reasonable and adequate." The court therefore GRANTS the parties joint motion for final approval of the Third Amended Agreement.

## IV. CONCLUSION

The parties' joint motion for final approval of the Third Amended Agreement in the Class Docket, No. 13-CV-4166 is GRANTED. In No. 13-CV-4165, brought by the United States against the State of New York, the Third Amended Agreement serves as a Consent Judgment and is also APPROVED. (*See* Sept. 2018 M&O at 18.)

SO ORDERED.

Dated:    Brooklyn, New York
          March 8, 2024

                              s/Nicholas G. Garaufis
                              _____
                              NICHOLAS G. GARAUFIS
                              United States District Judge